[Civ. No. 46730. Second Dist., Div. Five. Dec. 22, 1975.]

SANDRA TRIPPE, Plaintiff and Respondent, v.
HAROLD M. TRIPPE, Defendant and Appellant.

## Counsel

Charles Murstein for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Juliet H. Swoboda and Nancy A. Saggese, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**HASTINGS, J.—**

### Statement of the Case

On September 7, 1963, appellant and Sandra Trippe (Sandra) were married in Las Vegas, Nevada. Two children were born of this marriage, Rosemary B. Trippe on February 3, 1964, and Harold Trippe on May 16, 1965. On August 3, 1973, a Los Angeles Superior Court order entered in Long Beach, California, directed appellant to contribute $275 per month for the support of these children. Appellant and Sandra were divorced on November 3, 1973, in Los Angeles, California. Sometime thereafter, Sandra and the two children moved to the State of New Mexico.

On May 28, 1974, a petition for support containing the above stated information was filed in the District Court of Bernalillo County, New Mexico, under the provisions of the Uniform Reciprocal Enforcement of Support Act (Reciprocal Support Act) to compel the support of the Trippe children. The petition alleged that on January 5, 1974, and subsequent thereto, appellant had failed to provide for their support, and it was alleged that he owed $1,031.25 in arrearages. The New Mexico court found that appellant had the duty to support the children, and certified the petition for transmittal to the Los Angeles Superior Court. All subsequent proceedings took place in the Los Angeles Superior Court.

On March 4, 1975, appellant and his counsel appeared in the Los Angeles Superior Court and appellant's questionnaire was admitted into evidence. In the questionnaire, he admitted that he was not contributing toward the support of anyone other than himself; reported that his weekly pay was $430 and take-home pay was $258; and stated that he was able to contribute $30 weekly for the support of the children.

The court ordered appellant to pay $275 per month, plus a 2 percent service charge, beginning March 15, 1975, and continuing thereafter until further order of the court.

This appeal is from the order of support.

## ARGUMENT

The substance of appellant's argument is that *Smith* v. *Smith*, 125 Cal.App.2d 154 [270 P.2d 613], holds that the Reciprocal Support Act imposes an independent responsibility on the local court to decide the duty and the amount of support. That the trial court, instead of taking evidence on the amount of support he should pay, established a predisposition to adopt the child support payments awarded in a previous decision; therefore, because appellant was not permitted to testify, he was denied due process of law.

The reporter's transcript reflects that the first order of business at the hearing was a request to admit appellant's questionnaire into evidence. This was granted. The questionnaire stated that appellant had gross earnings of $430 per week (up $80 per week since the first order). Itemized monthly expenses totalled $960. The questionnaire concluded with a statement that appellant was able to contribute $30 weekly for

child support. The record also contained Sandra's testimony by written declaration attached to her petition as required by the Reciprocal Support Act, which listed the monthly expenses required by her and the children.

After the court admitted appellant's questionnaire, *the deputy district attorney representing Sandra asked the court to adopt the previous order of $275 per month, plus a 2 percent trustee's fee.* The following colloquy took place between Mr. Murstein, attorney for appellant, and the court:

"MR. MURSTEIN: To which, may it please the Court, we object there, because the conditions are different. It's not within the ability of Mr. Trippe to meet those type of payments. It is not within his ability. And as far as we are concerned, we put on evidence substantiating each and every item contained in the questionnaire, which would show he has no ability to pay anywhere near that amount of money.

"I don't want him to be in contempt from the word 'go,' from the making of an order. His present financial condition is such that he cannot pay that. It is not within his ability.

"THE COURT: Well, of course it's the Court's order. *It's this Court's order already. The remedy is to modify this order.* And I will put in the minute order that this order is without prejudice to your seeking a modification of the order. *But we must adopt our own order, counsel.*

"MR. MURSTEIN: ". . . In view of his expenses and his earnings, he couldn't possibly meet that without being in contempt a minute after your order, your Honor. I don't want that to be—

"THE COURT: *His remedy is to seek a modification of our Court order.* I will put in the minute order also that he believes that he cannot comply with this order.

"Is he going to plan to seek a modification?

"MR. MURSTEIN: We will have to do that, your Honor, yes." (Italics added.)

The cited colloquy establishes beyond a doubt that the trial court believed it was required to adopt as its order the prior court order of $275 per month. The deputy district attorney had requested the court to

adopt the previous order, and when appellant's counsel objected the court responded, "we must adopt our own order" and "his remedy is to seek a modification of our Court order."

▮ It is unfortunate that we must reverse the trial court because the issue in this case is for most practical purposes moot.[1] However, the court was in error and we have no alternative. It is also desirable to resolve any misunderstanding that the trial courts might have on this question.

Code of Civil Procedure section 1682, in pertinent part, states: "If the responding court [California] finds a duty of support, it may order the obligor to furnish support . . . and subject the property of the obligor to the order. . . ." In *Worthley* v. *Worthley*, 44 Cal.2d 465 [283 P.2d 19], the court cites this section as authorizing modification in this type of hearing. Beginning on page 472, the court states: "In proceedings commenced pursuant to the provisions of that act [Reciprocal Support Act], the California courts must recognize and enforce foreign alimony and support decrees whether modifiable or not (Code Civ. Proc., § 1670), and must afford the defendant an opportunity to litigate the issue of modification. (Code Civ. Proc., § 1682;[2] *Griffin* v. *Griffin, supra*, 327 U.S. 220, 233-234 [90 L.Ed. 635, 642-643, 66 S.Ct. 556].) If we should now refuse to follow the policy expressed by the Legislature in the Uniform [Reciprocal Support] Act, and by this court and the United States Supreme Court in the Sampsell[3] and Griffin cases, and should hold that even though the courts of this state have personal jurisdiction over the defendant, his obligations under a prospectively and retroactively

[1]On June 19, 1975, approximately three months after the above hearing of March 4, 1975, an order to show cause re modification was held and appellant was ordered to continue the payments of $275 per month except for those months when he travels to visit the children in New Mexico. Our reversal does not affect this order. The only issue to be determined on retrial, (should appellant pursue this right), would be the amount appellant would be required to pay under the Reciprocal Support Act from March 4, 1975, to June 19, 1975 under the circumstances as they existed on March 4, 1975.

[2]Code of Civil Procedure, section 1689 is also noteworthy. It provides as follows: "A support order made by a court of this state pursuant to this title does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar provision of law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state."

Although this section is not a model of statutory draftsmanship, it strongly suggests that the court's support order under the Reciprocal Support Act may be different than the original order of this state or another state.

[3]*Sampsell* v. *Superior Court*, 32 Cal.2d 763 [197 P.2d 739].

modifiable sister-state support decree cannot be enforced in this state, the result would be anomalous. There would then be two rules in California, one for proceedings commenced under the Uniform Act, and a contrary one for all other proceedings to enforce foreign-created alimony and support obligations. ...

"Accordingly, we hold that foreign-created alimony and support obligations are enforceable in this state. In an action to enforce a modifiable support obligation, either party may tender and litigate any plea for modification that could be presented to the courts of the state where the alimony or support decree was originally rendered."

And in *Whittlesey* v. *Bellah,* 130 Cal.App.2d 182 [278 P.2d 511], beginning on page 184, the court says: "An action for the future support of minor children is a personal one. Being personal it is transitory. [Citation.]

"The application of the law of uniform reciprocal enforcement of support was given exhaustive study in *Smith* v. *Smith [supra],* 125 Cal.App.2d 154 [270 P.2d 613]. In that case Mr. Justice Vallée, speaking for the court, points out that the courts of this state do not abdicate any of their judicial power in deciding this sort of proceeding.

"Therefore, the amount of support money required by the minor child in this case is entirely at large in this state. We are not bound by the recommendation of the New York court, or by the proof for the minor presented in that court. ..."

". . . Under the Reciprocal Enforcement Laws of New York and California, in this case the courts of California have jurisdiction to ascertain and enforce adequate support for this minor child. ..."

In the case at bar it is possible that the trial court believed it could not modify the prior order because it was originally made by a Los Angeles Superior Court. If this was the court's belief, it was incorrect. The Los Angeles order was recognized, and in effect adopted, by the New Mexico court in order to enable Sandra to proceed in California under the Reciprocal Support Act. As such, for the reasons stated above, it was within the court's discretion to modify the order if changed circumstances justified a modification. However, the record is clear that the

court did not exercise its discretionary power under a mistaken belief that it was required to adopt the prior order. Appellant was entitled to have any changed circumstances (if indeed there were any) considered.

The order of support is reversed.

Kaus, P. J., and Ashby, J., concurred.